# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2143

_____

United States of America

*Plaintiff - Appellee*

v.

Belle Brave Bull

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: May 16, 2016
Filed: July 11, 2016

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Belle Brave Bull pled guilty to voluntary manslaughter and assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153, 5032, 1112, and 113(a)(3). She appeals her sentence, objecting to an upward departure and the reasonableness of her sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Intoxicated, Brave Bull and a group of friends began to argue. She lunged toward one of them with a metal object, accidentally striking someone else causing a deep laceration to the head. She continued arguing with yet another friend, Frances Kathryne Wanna, outside. Wanna tried to calm the group down by pretending to call the police. Brave Bull threatened her with a shovel for being a "snitch." Wanna curled up on the ground, crying. Brave Bull followed her into the house, pushing her backwards down a flight of basement stairs. Brave Bull and another friend went to check on her. She appeared to be crying. No one touched her. No one called for medical help because some in the group had prior felonies and were on probation or supervised release. The group left without Wanna. Two hours later, police found her dead, still at the bottom of the steps in a contorted position. The fall dislocated a femur and the first and second vertebrae, immobilizing her. Medical experts testified she probably lived up to an hour-and-a-half to two hours after the fall, and that she likely would have survived with immediate medical attention.

The district court sentenced Brave Bull to 162 months' imprisonment, departing upward from criminal history category I to category VI. Brave Bull contends the district court erred in departing upward on its three bases—U.S.S.G. § 5K2.8 for conduct that was "unusually heinous, cruel, brutal, or degrading to the victim," U.S.S.G. § 5K2.21 for dismissed charges, and U.S.S.G. § 4A1.3 for inadequacy of Brave Bull's criminal history category and likelihood of recidivism. She also objects to the reasonableness of the sentence.

I.

A.

"This court reviews an upward departure, if objected-to, for abuse of discretion." *United States v. White Twin*, 682 F.3d 773, 775 (8th Cir. 2012). Under § 5K2.8:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

Brave Bull claims that her conduct "in the heat of battle," while both she and the victim were drunk, is not extreme conduct.

The district court did not abuse its discretion in departing upward under §5K2.8. Brave Bull intentionally pushed Wanna down the basement stairs, and after checking, left her there without help. The district court, viewing photographs, said:

> [A]ny person, other than somebody who was blind, could know by looking at those photographs and actually looking at the victim that she was not fine and that she was dying. You can look at that and see in these pictures, just that alone, that the victim was seriously injured and needed medical attention immediately.

The district court also said:

> As I say, I was struck primarily . . . of the cruelty of these young people in leaving Frannie there to die. I do not understand that—how anyone could do that.
>
> . . . .
>
> . . . . When you leave somebody that you know or should have known is dying and has been very severely injured, that is conduct that is heinous, cruel, and brutal beyond the normal assault case.

The court concluded that "the conduct here is outside the heartland of the typical voluntary manslaughter case." *See United States v. Iron Cloud*, 312 F.3d 379, 382 (8th Cir. 2002) (applying § 5K2.8 where defendant's conduct allowing the victim "to

-3-

be swept away by the rushing current and did nothing to try to save her" was "outside the heartland of the typical voluntary manslaughter case"). This court "respect[s] the district court's superior feel for the case" when reviewing U.S.S.G. §5K2.8. *Id.*

B.

Brave Bull did not object to the upward departures under the guidelines sections 5K2.21 and 4A1.3. This court reviews these departures for plain error. *United States v. Mees*, 640 F.3d 849, 854 (8th Cir. 2011). Under plain-error review, the defendant must show: (1) an error; (2) that is plain; (3) that affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Ault*, 598 F.3d 1039, 1042 (8th Cir. 2010).

Under § 5K2.21, "[t]he court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." "A sentencing court may rely upon dismissed charges in fashioning a reasonable sentence." *United States v. Azure*, 536 F.3d 922, 932-33 (8th Cir. 2008). "In order to rely upon a dismissed charge for purposes of sentencing, the government must prove the defendant committed the alleged offense by a preponderance of the evidence." *Id.* at 933. "[A]lthough the quantum of proof is less than the beyond-a-reasonable-doubt formulation used at trial, the burden of proof remains unchanged at sentencing: the government bears the burden." *Id.* The district court noted the dismissal of second degree murder count due to a plea agreement, and that Brave Bull's initial shovel-assault of Wanna was never charged. Brave Bull argues there was insufficient evidence that she killed Wanna with "malice aforethought." *See* **18 U.S.C. § 1111(a)**.

-4-

The district court did not plainly err in departing upward under § 5K2.21. "Malice may be shown . . . by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that the factfinder is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. French*, 719 F.3d 1002, 1008 (8th Cir. 2013) (brackets and quotations omitted). By the unobjected-to facts, Brave Bull called Wanna a "snitch" and threatened her with a shovel while she was curled up on the ground asking to go home. After pushing Wanna down the stairs backwards, Brave Bull checked on her without seeking medical help. *See United States v. Schiradelly*, 617 F.3d 979, 984 (8th Cir. 2010) ("[F]act statements in the PSR, to which Schiradelly did not object, adequately supported a finding that the dismissed charges were properly proved."). Here, the district court found that "when you push somebody down the stairs backwards, you are, of course, taking a great risk. And I don't think that being drunk excuses this type of cruelty . . . ." *See United States v. Eder*, 836 F.2d 1145, 1149 (8th Cir. 1988) (finding "[t]he evidence supports an inference of malice by the jury because Eder was aware of the serious risk of death to Shelena and failed to act" where defendant inflicted head injury to victim, then fled with victim, neglecting her medical needs until she died). The facts here demonstrate, by a preponderance of the evidence, that Brave Bull was aware of a serious risk of death to Wanna when she pushed her down the stairs and left her immobilized with no medical assistance.

Brave Bull challenges the district court's departure under § 4A1.3. She first argues she had no notice of the district court's finding that her criminal history category substantially under-represented the seriousness of her criminal history and the likelihood of recidivism. To the contrary, paragraph 50 in the PSR, listing 11 convictions, states that "sentences resulting from tribal court convictions are not counted, but may be considered under § 4A1.3." Brave Bull thus had notice of a potential upward departure under § 4A1.3. *See White Twin*, 682 F.3d at 776 (noting PSR listed defendant's extensive history in tribal courts, and district court did not

abuse discretion in departing under § 4A1.3 *sua sponte*). *Cf. United States v. Adetiloye*, 716 F.3d 1030, 1038 (8th Cir. 2013) ("[T]he district court was not required to provide separate notice under Rule 32(h) in this case because the PSR already listed § 2B1.1 cmt. n. 19(A) as a ground for departure.").

Brave Bull also asserts that the district court did not adequately explain the extent of its departure from a category I to VI. "To impose an upward departure under § 4A1.3, the sentencing court first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category . . . ." *Azure*, 536 F.3d at 931. This does not need to be a "ritualistic exercise in which the sentencing court mechanically discusses each criminal history category it rejects en route to the category that it selects. But the sentencing court must adequately explain why it determines that the intermediary categories fail to meet the purposes of § 4A1.3." *Mees*, 640 F.3d at 854 (internal citation and quotation marks omitted).

Brave Bull emphasizes that her tribal convictions were non-violent. *See United States v. Gonzales-Ortega*, 346 F.3d 800, 802 (8th Cir. 2003) ("The Guidelines do note that the nature of the prior offenses and not the sheer number of prior offenses 'is often more indicative of the seriousness of the defendant's criminal record.'"). Her prior history consisted of mostly underage substance-abuse crimes, failure to appear for court, and disorderly conduct. In addition to two pending underage alcohol consumption charges, the court found she was violating substance-abuse laws "on almost a daily basis" by "ingesting methamphetamine." The district court also discussed Brave Bull's relevant conduct in the instant offense—including the uncharged assault with the shovel. *See Mees*, 640 F.3d at 854 (finding the instant offense—one charge for theft concerning federal funds—did not encompass all defendant's criminal conduct that occurred as a part of the embezzlement scheme). The district court does not have to "specifically mention that it had considered the

criminal histories of other offenders in each intermediate criminal history category," but its findings must adequately explain and support the departure. *Id.* at 855.

It is not readily apparent, from the record, why the intermediate categories fail to meet the purposes of § 4A1.3. However, even if the district court did not adequately explain the increase from category I to category VI under § 4A.13, it did not affect Brave Bull's substantial rights. The district court also departed under § 5K2.8 and § 5K2.21, because the offense was "heinous, cruel, and brutal," and the range did not adequately reflect the seriousness of the offense based on the dismissed second degree murder charge. The court found that Brave Bull's base offense level would have been 35 if she had pled guilty to second degree murder. The district court specifically found that under category I and level 35, the guideline range would be 168 to 210 months. In the end, the court left the offense level at 27, choosing to increase only the criminal history category—resulting in a lower guideline range of 130 to 162 months. The district court's increase to a criminal history category VI, even if error, did not substantially affect Brave Bull's rights due to the other bases for departure that the court found. *See Molina-Martinez v. United States*, 136 S.Ct. 1338, 1346 (2016) ("There may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. The sentencing process is particular to each defendant, of course, and a reviewing court must consider the facts and circumstances of the case before it.").

## II.

This court reviews the substantive reasonableness of the sentence for abuse of discretion. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear

error of judgment in weighing those factors." ***United States v. White***, 816 F.3d 976, 987 (8th Cir. 2016).

The district court appropriately considered the § 3553(a) sentencing factors. At the hearing, the court discussed Brave Bull's age, difficult upbringing, and lack of parental supervision. The court detailed at length the nature and circumstances of the offense and the need to provide just punishment, acknowledging "that a mother of a very small child has been taken away." The court addressed Brave Bull's history of substance abuse, recommending to the Bureau of Prisons that she be allowed to participate in the substance-abuse treatment program. Finally, the court "carefully considered" the § 3553 sentencing factors and explained, "A sentence of 7.25 years for this type of conduct is totally inadequate, and I also think that the sentence that the Government is asking for is excessive. That would be 25 years." The court sentenced Brave Bull to 162 month's imprisonment. After the upward departure the guidelines range was 130 to 162 months. The court's 162-month sentence is appropriate. ***Feemster***, 572 F.3d at 461 ("If the defendant's sentence is within the Guidelines range, then we 'may, but [are] not required to, apply a presumption of reasonableness.'" (citing ***Gall v. United States***, 522 U.S. 38, 51 (2007)).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____